UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

FLSC RECYCLING, LLC,
a Florida limited liability company,

    Plaintiff,

v.

OC TEXTILE RECYCLING, INC.,
a California corporation, JOHN HYUNH,
an individual, and TAN HYUNH, an individual,

    Defendants.
_____/

## COMPLAINT

Plaintiff FLSC Recycling, LLC ("Plaintiff" or "Franchisor") by and through undersigned counsel, hereby sues Defendant, OC Textile Recycling, Inc.("Franchisee"), John Hyunh, and Tan Huynh (collectively with John Hyunh, the "Guarantors"), and states as follows:

## THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff, FLSC Recycling, LLC, is a limited liability company organized under the laws of the state of Florida with its principal place of business in 3911 SW 47th Avenue, Suite 903, Davie, Florida 33314.

2. Defendant, OC Textile Recycling, Inc, is a corporation organized under the laws of the state of California with its principal place of business in 156 Pineview, Irvine, California, 92620.

3. Defendant, John Hyunh, is an individual over the age of eighteen and resides in Irvine, California, 92620. Mr. Hyunh is an owner and principal of Franchisee.

4. Defendant, Tan Hyunh, is an individual over the age of eighteen and resides in Irvine, California, 92620. Mr. Hyunh is an owner and principal of Franchisee.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on Defendant's violation of 15 U.S.C. § 1125.

6. Pursuant to the Franchise Agreement between Franchisor and Franchisee (the "Franchise Agreement") and the Guarantee attached as Exhibit E to the Franchise Agreement signed by Guarantors ("Guaranty"), each of the Defendants irrevocably agreed to submit to the jurisdiction and venue of this Court. *See* §§ 23 of the Franchise Agreement, annexed hereto as **Exhibit "A."**

7. Pursuant to the Franchise Agreement and the Guaranty, each of the Defendants agreed that the law of the State of Florida shall govern any and all disputes between the parties. See Ex. A, § 23.

8. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## GENERAL ALLEGATIONS

9. FLSC Recycling ("Franchisor") is the national franchisor of the Clothes Bin franchise system.

10. Franchisor has developed a system for the operation, management, monitoring, and placement of recycling collection bins for clothes, shoes and other textile items, as well as for the collection, management, transportation, distribution, and resale of collected clothes, shoes and other textile items (the "Franchises System").

11. The Franchise System is made up of franchisees who own protected territories and operate clothing and textile recycling Bins. Franchisor strategically focuses on placing Bins in

areas where people congregate, including parking lots of convenience stores, gas stations, shopping centers, etc.

12. Franchisor has registered the following proprietary marks with the U.S. Patent and Trademark Office (USPTO) on the Principal Register (the "Clothes Bin® proprietary marks" or "Proprietary Marks"):

| Mark | Application/ Registration Number | Filing/ Registration Date | Status |
| --- | --- | --- | --- |
| CLOTHES BIN | 6061977 | Registered May 26, 2020 | Registered on the Principal Register of the USPTO |
| Clothes Bin (logo) | 6061973 | Registered May 26, 2020 | Registered on the Principal Register of the USPTO |
| BLIP | 4749730 | Registered June 2, 2015 | Registered on the Principal Register of the USPTO |

13. Franchisor provides franchisees with the tools they need to grow their business, which includes a sophisticated Bin Location Information Program ("BLIP") and a National Buyer Program to help owners sell the collected goods.

14. The Bins are placed on private property with prior authorization. Franchisees are required to obtain advance written permission from the property owner prior to placing the Bins at a particular site. Ex. A, Section 3.2.

15. On or about April 3, 2018, Franchisor and Defendants entered into a Franchise Agreement with Jon Huynh and Tan Huynh, which was subsequently assigned to OC Textile Recycling, Inc. ("Defendant" or "Franchisee").

16. The Franchise Agreement was originally granted to the Huynh's personally and as Guarantors, *see* Ex. A, p. 1; however, the parties executed an Assignment, which made OC Textile Recycling, Inc. the franchisee (the "Franchisee"). The Assignment and Assumption is attached hereto as **Exhibit "B."** Franchisee's obligations under the Franchise Agreement remained personally guaranteed by the Huynh's as Guarantors through the Guaranty. *See* Ex. A, exhibit E thereto.

17. Pursuant to the Franchise Agreement, Franchisee sought the right to operate a Clothes Bin business in strict compliance with the Franchisor's standards and specifications (the "Franchised Business") within the territory known as Mission Viejo, California and identified in Exhibit A of the Franchise Agreement ("Territory"). *See* Ex. A, p. 1, exhibit A thereto.

18. The Franchise Agreement had an initial term of five years and was set to expire on April 3, 2023. *See* Ex. A, § 1.4.

19. However, the Defendants have violated the Franchise Agreement in numerous respects thereby forcing Franchisor to terminate their franchise rights.

20. Specifically, the Franchise Agreement provides that "Franchisee shall lease or make other written arrangements for the locations of Bins prior to placing the Bins at any location." However, Franchisee has disregarded that critical requirement and has instead placed Bins at locations without the property owners' permission in material breach of the Franchise Agreement. *See* Ex. A, § 3.2.A

21. The Franchise Agreement also prohibits Franchisee from using the "Proprietary Marks in connection with … any other manner not explicitly authorized in writing by Franchisor." *See* Ex. A, § 14.3. Placing Bins with Proprietary Marks on properties without the owners' permission is not an authorized use of the Proprietary Marks. To the contrary, such action denigrates and harms the Marks.

22. Further, the Franchise Agreement requires Franchisee to maintain the immediate area surrounding the Bins "in the highest degree of cleanliness, and … to diligently monitor and maintain the level of clothes, shoes and textiles, in the Bins at all times to prevent overflows of clothes, shoes and textiles outside of the Bins." *See* Ex. A, § 14.8.

23. The Franchise Agreement also requires Franchisee "to operate the Franchised Business in strict compliance with all applicable laws, rules, regulations and ordinances of all governmental authorities… [and] at all times comply with all applicable laws, rules, regulations and ordinances relating to the Bins and the appearance of the Bins." *See* Ex. A, § 4.12.

24. Pursuant to the Franchise Agreement, Franchisee is required to "pay Franchisor a weekly Continuing Royalty Fee." The Continuing Royalty Fee is owed to Franchisor on a weekly basis in the following manner:

(i) Commencing on the thirtieth (30th) day of Franchisee's receipt of its first shipment of 20 Bins, One Hundred Dollars ($100) per week;

(ii) Commencing on the thirtieth (30th) day of Franchisee's receipt of its second shipment of 20 binds, Two Hundred Dollars ($200) per week; and

(iii) Commencing on the thirtieth (30th) day of Franchisee's receipt of any additional shipments of Bins (beyond the initial package of 40 Bins), the greater of (y) Five Dollars ($5) per Bins that Franchisee has purchased and received, whether or not any or all of the Bins are placed at Bin Locations within the time limits required by this Agreement, or (z) Two Hundred Dollars ($200) per week.

*See* Ex. A, § 7.1

25. Additionally, Franchisee is required to "pay to Franchisor a weekly BLIP Monitoring Fee equal to:"

(i) Commencing on the thirtieth (30th) day of Franchisee's receipt of its first shipment of 20 Bins, Eighty Dollars ($80) per week;

(ii) Commencing on the thirtieth (30th) day of Franchisee's receipt of its second shipment of 20 binds, One Hundred Sixty Dollars ($160) per week; and

(iii) Commencing on the thirtieth (30th) day of Franchisee's receipt of any additional shipments of Bins (beyond the initial package of 40 Bins), the greater of (y) Four Dollars ($4) per Bins that Franchisee has purchased and received, whether or not any or all of the Bins are placed at Bin Locations within the time limits required by this Agreement, or (z) One Hundred Sixty Dollars ($160) per week.

*See* Ex. A, § 7.2.

26. In its July 13, 2021 letter, Franchisor warned Franchisee that Franchisor had been notified by several property owners that Franchisee was placing Bins at locations within their Territory without the required permission from property owners.

27. Further, as set forth in its July 13, 2021 correspondence, Franchisor warned Franchisee that it had failed to timely pay Continuing Royalty Fees and BLIP Monitoring Fees in material breach of Sections 7.1 and 7.2 of the Franchise Agreement.

28. Despite these warnings, on July 20, 2021, Franchisor received a call and an email from a property owner located at 432 N. Tustin, Orange, CA who complained that a Bin showed up out of nowhere on the property without the owner's permission and that there was debris near the Bin.

29. On July 27, 2021, Franchisor received a complaint from the owner of the property at Plaza Drive and Warner Avenue in Huntington Beach, California (Ralph's Center) regarding Franchisee illegally placed Bins on their property in violation of local zoning laws.

30. A property owner located at 13730 Goldenwest St., Westminster, California, 92683 notified Franchisor of the debris and mess Franchisee left after Bins were removed from the property that it never had permission to use in the first place.

31. Franchisor has received several notices from various property owners complaining of same or similar conduct by Franchisee.

32. On July 28, 2021, Franchisor notified Franchisee that it was in default under the Franchise Agreement due to Franchisee's failure to lease or obtain written permission from property owners of the locations for Franchisee's Bins and based on Franchisee's failure to pay Continuing Royalty Fees. The July 28, 2021, Notice of Default is attached hereto as **Exhibit "C."**

33. Following the July 28, 2021, Notice of Default, Franchisor continued to receive complaints from property owners regarding Franchisee's illegally placed bins. Additionally, Franchisee failed to pay $20,707.12 in Continuing Royalty Fees and BLIP Monitoring Fees that were due to Franchisor as of July 28, 2021.

34. On December 17, 2021, in accordance with Sections 16.2.E and 16.3.B of the Franchise Agreement, Franchisor notified Franchisee that it was terminating the Franchise Agreement due to Franchisee's failure to timely cure the material defaults set forth in the notice of default issued on July 28, 2021. The December 17, 2021, Notice of Termination is attached hereto as **Exhibit "D."**

35. Franchisee failed to timely pay Continuing Royalty Fees and BLIP Monitoring Fees in material breach of Sections 7.1 and 7.2 of the Franchise Agreement. In total, Franchisee owes $27,962.32 in past due fees pursuant to Sections 7.1 and 7.2 of the Franchise Agreement. *See* Ex. A, § 7.1, 7.2.

36. The Franchise Agreement was terminated based on Franchisee's material breaches of Sections 4.8, 4.12, 7.1, 7.2 and 14.3 of the Franchise Agreement. *See* Ex. D.

37. The Notice of Termination confirmed the termination of the Franchise Agreement and advised Defendants of their requirements to comply with the post-terminations provisions of the Franchise Agreement including, *inter alia*, Sections 12 and 17. *See* Ex. D. Such provisions surviving termination include Defendants' post-termination non-competition and non-solicitation provisions.

38. Section 17.1 provides that Franchisees must continue to comply with the continuing obligations set forth in the Franchise Agreement, including the post-termination obligations set forth in Sections 12 and 17 thereof.

39. Section 17.1.A provides, "[i]f the Agreement expires or terminates for any reason, Franchisee will cease to be an authorized Clothes Bin franchisee and Franchisee will lose all rights to the use of the Proprietary Marks, the System, all Confidential Information and know-how and any goodwill engendered by the use of the Proprietary Marks." *See* Ex. A, § 17.1.A.

40. Specifically, Section 12.1(v) of the Franchise Agreement contains a covenant not to compete for a period of 3 years immediately following the termination of the Franchise Agreement. For a period of 3 years thereafter, Franchisee cannot, directly or indirectly, place or use any collection bins for clothes, shoes and textiles, or own, manage, operate, maintain, engage in, work at, be employed by, consult with or have any interest in a Competitive Business[1] within Franchisee's former Territories; within 25 miles from your former Territories' boundaries, and within the territory of any franchisee or affiliate operating a Clothes Bin business or who has signed

---

[1] A "Competitive Business" is defined in the Franchise Agreement as a "business which is similar to the business of the Franchised Business or, which offers or sells any product, service or component which now or in the future is or becomes part of the System and/or is offered by Clothes Bin businesses, or any similar product or service."

8

**ZARCO EINHORN SALKOWSKI & BRITO**
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

a franchise agreement for the operation of a Clothes Bin Business as of the termination date. *See* Ex. A, § 12.1(v).

41. Additionally, Defendants' post-termination obligations pursuant to Section 17.1 includes, among other things: (i) immediately paying all past due amounts owed to Franchisor, amounting to $27,962.32; (ii) discontinuing the use of the Proprietary Marks or any confusingly similar marks, including, but not limited to, all forms, advertising, signs, and other items and materials containing the Proprietary Marks; (iii) ceasing all use of Franchisor's Confidential Information and any part of the Clothes Bin System; (iv) taking all necessary action to cancel the fictitious name registrations and other registrations which contain "Clothes Bin" or other Proprietary Mark, within 15 days; (v) delivering to Franchisor all training or other manuals furnished to Franchisor, including the Operations Manual, and any items, forms and other materials that contain the Proprietary Marks; (vi) ceasing use of the telephone number for Franchisee's former Clothes Bin business and directing the telephone company to transfer the number to Franchisor or its designee; (vii) strictly complying with the post-termination covenants not to compete set forth in the Franchise Agreement; (viii) abiding by Franchisee's confidentiality obligations set forth in the Franchise Agreement; (ix) surrendering all BLIP data to Franchisor relating to the former Clothes Bin business; and (x) de-identifying all of the Bins by removing Franchisor's trade dress. *See* Ex. A, § 17.1.A.

42. Notwithstanding Defendants' post-termination non-competition obligations, Defendants continue to operate, within the area restricted by Section 12.1 of the Franchise Agreement in direct contravention of Defendants' post-termination obligations and in material breach of Section 12.1 of the Franchise Agreement.

43. Notwithstanding Defendants' post-termination obligations, Defendants continue to operate and use the Clothes Bin® proprietary marks in direct contravention of Defendants' post-termination obligations and in material breach of Section 17.1 of the Franchise Agreement.

44. Defendants have failed to pay and continue to owe Franchisor $27,962.32 in past due amounts in direct contravention of Defendants' post-termination obligations and in material breach of Section 17.1 of the Franchise Agreement.

45. Additionally, despite Defendants' post-termination obligations in Section 17.1, Defendants have not returned to Franchisor its proprietary operations manual and materials and it is believed that Defendants are using Franchisor's confidential information, including the operations manual, in the operation of their now competing business.

46. The non-competition covenant violated by Defendants is reasonably necessary to protect the legitimate business interests of Franchisor and its Franchise System. Namely, Franchisor has a legitimate business interest in protecting: (i) the valuable confidential business information of the Franchise System; (ii) the substantial relationships with prospective and existing customers of its franchisees; and (ii) the goodwill associated with the Clothes Bin® proprietary marks under which franchisees operate. These legitimate business interests justify the restriction of prohibiting Defendants from operating a competing business within 25 miles of Defendants' former Franchised Business location, or within the territory of any other franchisee, which Defendants are clearly violating by continuing to operate their business.

47. As a result of Defendants' material breaches of the Franchise Agreement and the Guaranty, Franchisor has suffered, and continues to suffer, substantial damages.

48. Specifically, Defendants' continued operation of their business causes irreparable harm to Franchisor by diverting business (away from authorized franchisees to Defendants'

competing business), irreparably damaging the customer goodwill and relationships that Franchisor has spent considerable time and expense to develop and maintain, and a loss of profits and revenues that cannot be readily ascertained. Unless restrained by this Court, Defendants will continue to operate the unlawful competing business and to use Franchisor's confidential and proprietary business information as well as Clothes Bin® proprietary marks causing further irreparable harm to Franchisor and the Franchise System, which cannot be adequately remedied by compensatory damages.  Therefore, Franchisor has no adequate remedy at law.

49. Defendants agreed that a violation of any of the post-term restrictive covenants contained in Section 12 of the Franchise Agreement would "result in immediate and irreparable injury to Franchisor for which no adequate remedy at law will be available." Accordingly, Defendants have consented to the entry of an injunction prohibiting any conduct by Defendants in violation of the terms of the covenants not to compete set forth in this Agreement. *See* Ex. A, § 12.3.

50. Defendants further agreed to pay all costs and expenses, including reasonable attorneys' and experts' fees, incurred by Franchisor in connection with the enforcement of the covenants not to compete set forth in this Agreement. *See* Ex. A, § 12.3.

51. Franchisor has been compelled to retain the services of the undersigned attorneys and has agreed to pay its attorneys a reasonable fee for services rendered.  Pursuant to Section 12.3, 23.1, and 23.2 of the Franchise Agreement, Franchisor is entitled to recover its attorneys' fees and costs from Defendants.

## CAUSES OF ACTION

### Count I – Trademark Infringement and Unfair Competition under the Lanham Act
### (15 U.S.C. Section 1125(a))

52. Franchisor realleges and incorporates the allegations set forth in paragraphs 1 through 51, *supra*, as if fully set forth herein.

53. The Clothes Bin® proprietary marks are protected under the Lanham Act as well as under the common laws of several states.

54. Defendants' use of the Clothes Bin® proprietary marks in violation of the terms of the Franchise Agreement is an unauthorized use which is causing, or is likely to, cause confusion or mistake or to deceive as to the source and origin of goods and services used in commerce or as to affiliation, connection, association, sponsorship or approval.

55. Defendants have continued to use the Clothes Bin® proprietary marks in violation of their post-termination obligations as set forth in Sections 12.1 and 17.1 of the Franchise Agreement. *See* Ex. A, § 12.1 and 17.1.

56. Defendants' use of the Clothes Bin® proprietary marks outside of the scope and/or in violation of the terms of the Franchise Agreement is an unauthorized use which infringes upon Franchisor's federally registered and common law trademark and service mark rights.

57. Franchisor has been damaged by Defendants' unauthorized and infringing use of Franchisor's federally registered and common law trademark and service mark rights.

58. Defendants' unauthorized and infringing use of Franchisor's federally registered and common law trademark and service mark rights has and continues to, tarnish and dilute the Clothes Bin® proprietary marks and depreciates the goodwill associated with the Clothes Bin Marks.

59. Defendants' unauthorized and infringing use of Franchisor's federally registered and common law trademark and service mark rights is causing and will continue to cause Franchisor irreparable harm not able to be remedied through an award of monetary damages alone.

60. With respect to Franchisor's federally registered Clothes Bin® proprietary marks, Defendants are liable to Franchisor for damages and other remedies provided in § 32 of the Lanham Act, 15 U.S.C. § 1114.

61. With respect to Franchisor's common law Clothes Bin® proprietary marks, Defendants are liable to Franchisor for damages and other remedies provided in § 43 of the Lanham Act, 15 U.S.C. § 1125.

### Count II – Breach of Contract (Franchise Agreement and Guaranty)

62. Franchisor realleges and incorporates the allegations set forth in paragraphs 1 through 51, *supra*, as if fully set forth herein.

63. The Franchise Agreement is a valid and binding contract between Franchisor and Franchisee. The non-solicitation and non-competition provisions of the Franchise Agreement survive its termination. *See* Ex. A, § 12.1, 17.1.

64. Franchisor has fully performed all conditions and obligations to be performed on its part under the Franchise Agreement.

65. Defendants materially breached Sections 4.8, 4.12, 7.1, 7.2 and 14.3 of the Franchise Agreement.

66. Defendants have failed to abide by its post-termination non-competition and non-solicitation obligations pursuant to the Franchise Agreement. Specifically, Defendants continue to operate their business within the restricted area and during the restricted time period, use Clothes Bin® proprietary marks, and to service Clothes Bins' customers.

67. Notwithstanding Defendants' post-termination non-competition obligations, Defendants continue to operate, within the area restricted by Section 12.1 of the Franchise

Agreement in direct contravention of Defendants' post-termination obligations and in material breach of Section 12.1 of the Franchise Agreement.

68. Notwithstanding Defendants' post-termination obligations, Defendants continue to operate and to use the Clothes Bin® proprietary marks in direct contravention of Defendants' post-termination obligations and in material breach of Section 17.1 of the Franchise Agreement.

69. Notwithstanding Defendants' post-termination non-competition obligations, Defendants' continue to owe Franchisor $27,962.32 in past due amounts in direct contravention of Defendants' post-termination obligations and in material breach of Section 17.1 of the Franchise Agreement.

70. Additionally, despite Defendants' post-termination obligations in Section 17.1, Defendants have not returned to Franchisor its proprietary operations manual and materials and it is believed that Defendants are using Franchisor's confidential information, including the operations manual, in the operation of their now competing business.

71. Guarantors personally agreed to these covenants and are, therefore, personally liable pursuant to the Guaranty. *See* Ex. A, exhibit E thereto.

72. The post-term non-competition and non-solicitation restrictive covenants are justified by Franchisor's legitimate business interests set forth in Paragraph 45 *supra*, and enforcement of the post-term non-competition covenant is reasonably necessary to protect these legitimate business interests.

73. The post-term non-competition covenant's time restriction of 36 months and the non-solicitation covenant's time restriction of 36 months are reasonable, as are the covenant's geographic area restrictions.

74. Defendants violated the post-term restrictive covenants and, therefore, materially breached the Franchise Agreement by operating a "competitive business," as defined by the Franchise Agreement, within the Territory of the former Franchised Business prior to the expiration of the covenant's 36 month duration, and by soliciting employees and customers of Defendants' former Franchised Business prior to the expiration of the covenant's 36 month duration.

75. As a direct, proximate, and foreseeable result of Defendants' material breaches of the Franchise Agreement and Guaranty, Franchisor has and continues to suffer substantial damages.

**WHEREFORE**, for the foregoing reasons, Plaintiff, FLSC RECYCLING, LLC, respectfully requests that this Court enter judgment against Defendants, OC TEXTILE, INC, JOHN HUYNH, and TAN HUYNH, for: (1) actual, compensatory, and consequential damages, including future lost royalty fees for the remainder of the initial term of the Franchise Agreement, in an amount to be determined at trial; (2) pre- and post-judgment interest; (3) reasonable attorneys' fees and costs pursuant to Sections 12.3, 23.1, and 23.2 of the Franchise Agreement; and (4) for such other and further relief as this Court deems just and proper.

### Count III – Injunctive Relief

76. Franchisor realleges and incorporates the allegations set forth in paragraphs 1 through 51, *supra*, as if fully set forth herein.

77. This is an action for injunctive relief to enjoin Defendants from: (i) continuing to operate a competing business within 25 miles of Defendants' former Franchised Business Territory, or within 25 miles of any other franchisee's Territory; (ii) continuing to use Franchisor's confidential information and Clothes Bin® proprietary marks in violation of the Franchise

Agreement; (iii) soliciting customers of Defendants' former Franchised Business; and (iv) otherwise violating the post-termination and non-compete provisions contained in the Franchise Agreement, with the time restriction extended by the duration of time that Defendants continue to violate the non-compete covenant.

78. Defendants have failed to abide by the above-referenced provisions of the Franchise Agreement and continued to operate a now competing business within the Territory of their former Franchised Business, are soliciting customers of Defendants' former Franchised Business, and are using Franchisor's proprietary marks and confidential business information in the operation of the competing business, in violation of the Franchise Agreement and Guaranty.

79. Unless restrained by this Court, Defendants will continue to operate the competing business using Franchisor's Marks and proprietary and confidential business information, and will continue to solicit and perform competing services for customers of Defendants' former Franchised Business causing irreparable harm to Franchisor, the Franchise System, as well as to its customer goodwill and customer relationships, which cannot be adequately remedied by compensatory damages. Therefore, Franchisor has no adequate remedy at law.

**WHEREFORE**, for the foregoing reasons, Plaintiff, FLSC RECYCLING, LLC respectfully requests that this Court enter an Order:

(i) enjoining Defendants, OC TEXTILE, INC, JOHN HUYNH, and TAN HUYNH, from continuing to operate their Franchised Business within 25 miles of Defendants' former Franchised Business Territory and 25 miles of any other franchisee;

(ii) enjoining Defendants from using Clothes Bin® proprietary marks and confidential business information;

(iii) enjoining Defendants from violating the Franchise Agreement's post-termination non-competition and non-solicitation covenants, with the time restriction extended by the duration of time that Defendants continue to violate the non-compete and non-solicitation covenants;

(iv) awarding Franchisor its reasonable attorneys' fees and costs pursuant to Sections 12.3, 23.1, and 23.2 of the Franchise Agreement and Fla. Stat. § 542.335(1)(k); and

(v) granting such other and further relief as this Court deems just and proper.

Dated: January 6, 2022.

Respectfully submitted,

**ZARCO EINHORN SALKOWSKI & BRITO, P.A.**
One Biscayne Tower
2 S. Biscayne Blvd., Suite 3400
Miami, Florida 33131
T: (305) 374-5418
F: (305) 374-5428

By: /s/ *ROBERT M. EINHORN*
**ROBERT M. EINHORN**
Florida Bar No. 858188
reinhorn@zarcolaw.com
jmenendez@zarcolaw.com
**KAARI GAGNON**
Florida Bar No. 46106
kgagnon@zarcolaw.com
**JACKY BEDA**
Florida Bar No. 1003619
jbeda@zarcolaw.com
sarrastia@zarcolaw.com